IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| EDWARD W.,<br><br>                              Plaintiff,<br><br>        vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>                              Defendant. | **4:23CV03240**<br><br>**MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |

Plaintiff Edward W.[1] seeks judicial review of the denial of his application for supplemental security income by defendant Commissioner of the Social Security Administration. Filing 1 at 2. Edward W. has moved for an order reversing the Commissioner's decision. Filing 15. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying supplemental security income. Filing 16. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Edward W.'s motion to reverse.

## I.   INTRODUCTION

### A.  Procedural Background

Edward W. applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and protectively filed for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, on April 19, 2021. Filing 9-2 at 19 (Administrative Record (AR) 18). Edward W. alleged an onset disability date of March 1, 1999, in his applications. Filing 9-2 at 19 (AR 18). Edward W.'s claims were initially denied by the

---

[1] The Court will refer to Plaintiff by first name and last initial to protect his privacy.

Social Security Administration (SSA) on December 27, 2021, and were denied again upon reconsideration on August 10, 2022. Filing 9-2 at 19 (AR 18).

Edward W. filed a written request for a hearing on August 24, 2022, pursuant to 20 CFR §§ 404.929 *et seq*., and 416.1429 *et seq*., following the two denials. Filing 9-2 at 19 (AR 18). The administrative law judge (ALJ) held a hearing to review the denial of Edward W.'s applications on December 19, 2022. Filing 9-2 at 19 (AR 18). The administrative hearing was held in person in Omaha, Nebraska. Filing 9-2 at 19 (AR 18). At the hearing, Edward W. amended the alleged onset date from March 1, 1999, to the application date, April 19, 2019, and acknowledged the withdrawal of the claim for disability insurance benefits under Title II. Filing 9-2 at 19 (AR 18). On February 15, 2023, the ALJ issued an unfavorable decision on Edward W.'s case. Filing 9-2 at 16 (AR 15). Edward W. requested a review of the ALJ's decision, and on October 5, 2023, the Appeals Council issued an order denying his request for review. Filing 9-2 at 2 (AR 1). Edward W. filed this timely action seeking judicial review and reversal of the ALJ's decision to deny his application for supplemental security income, or in the alternative, to vacate and remand this matter for further proceedings. Filing 1 at 2.

## B.  Factual Background

### 1.  *The Claimant and His Determined Disabilities*

Edward W. was forty-seven years old at the time of the alleged disability onset date of April 19, 2019, classifying him as a younger individual (eighteen to forty-nine years old) pursuant to 20 C.F.R. § 404.1563 and 20 C.F.R. § 416.963. Filing 9-2 at 33 (AR 32). Edward W. is classified as having a limited education, which places him in the third category—or second highest level of education—listed under 20 C.F.R. § 404.1564 (identifying the categories as "Illiteracy," "Marginal

education," "Limited education," and "High school education and above") and 20 C.F.R. § 416.964 (same). Filing 9-2 at 33 (AR 32). Edward W. lives with his daughter and relies on her and his former wife to manage household tasks such as cooking, cleaning, and doing laundry. Filing 9-2 at 25 (AR 24); Filing 9-2 at 52 (AR 51). Although Edward W. temporarily worked part-time smoking meats after his alleged disability onset date of April 19, 2019, the ALJ determined, and the parties do not dispute, that Edward W. did not engage in substantial gainful employment during the period after his alleged disability onset date pursuant to 20 C.F.R. §§ 416.971 *et seq.* Filing 9-2 at 21 (AR 20); Filing 15-1 at 2 ("The Plaintiff has no past relevant work"); Filing 17, at 3. The ALJ determined Edward W. had the following severe impairments significantly limiting the ability to perform basic work activities: ventricular septal defect (status post repair), atrioventricular block, tricuspid stenosis, and paroxysmal atrial fibrillation (status post pacemaker). Filing 9-2 at 22 (AR 21).

Edward W. avers three general bases in support of his motion for an order to reverse the Commissioner's decision. First, Edward W. alleges the ALJ did not articulate sufficient reasons for finding the medical opinions of his treating physician Dr. Michael Peters were not persuasive. Filing 15-1 at 8–13. Second, Edward W. contends the ALJ's residual functional capacity (RFC) failed to account for duodenitis, depression, anxiety, the need for unscheduled breaks, off task time, absenteeism, fatigue, chest pain at rest, palpitations, leg swelling, and shortness of breath; is less restrictive than State agency reviewing consultants found; and is based on improper inferences from the medical records. Filing 10 at 13–18. Last, Edward W. disputes the ALJ's reliance on allegedly obsolete jobs when determining whether a significant number of jobs exist in the national economy that Edward W. can perform. Filing 15-1 at 18. However, Edward W. does not provide

supporting arguments alleging that the jobs the ALJ testified to were obsolete. Instead, Edward W. argues separately that there is an unresolved conflict between the job description for eye glass frame polisher in the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony due to exposure to pulmonary irritants. Filing 15-1 at 18-19.

The medical evidence in this case provides a complex picture of ongoing cardiac issues Edward W. has experienced since the age of four. Filing 9-2 at 26 (AR 25); Filing 10-1 at 59 (AR 448). However, the factual dispute here relates to Edward W.'s physical condition prior to and after his April 2022 surgery. As such, the Court will provide an abridged statement of the medical records and other evidence focusing on evidence relevant to Edward W.'s challenges to the ALJ's decision.[2]

2.    *Medical Records and Evidence*

a.    Treating Physicians' Opinion of Edward W.'s Physical Condition

From at least October 8, 2020, through April 13, 2022, Edward W. regularly visited with Dr. Peters to check on his cardiology issues. Filing 9-2 at 26 (AR 25); *see generally* Filing 10-1 at 464 (AR 853), 59–108 (AR 448–497). Central to Plaintiff's first argument is a Cardiac Medical Source Statement dated December 9, 2022, provided by Dr. Peters (Dr. Peters's December 2022 Statement). Filing 15-1 at 8; Filing 11-1 at 175–79 (AR 1136–40).

---

[2] Plaintiff additionally included evidence of a previous ALJ ruling from June 27, 2003, in his brief. Filing 15-1 at 1–2. Plaintiff's prior application for supplemental income and the ALJ's ruling on it, regardless of whether or not the decision was favorable, is not under review and, therefore, is irrelevant to the claim now before the court. The question is whether Plaintiff was disabled on and after the alleged disability onset date. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (the relevant time period in supplemental security income cases starts with the date of the claimant's supplemental security income application.); Social Security Acquiescence Ruling (SSAR) 00-1(4), 5 FR 1936, 1938, 2000 WL 17162 (Jan. 12, 2000) ("SSA does not consider prior findings made in the final determination or decision on the prior claim as evidence in determining disability with respect to the unadjudicated period involved in the subsequent claim.").

In it, Dr. Peters opined that the cumulative effects of Edward W.'s cardiac impairments[3] would result in further valve failure in five to ten years, and found that he continues to experience chronic fatigue, ascites, weakness, exercise intolerance, arrhythmia, and exertional dyspnea. Filing 11-1 at 175 (AR 1136); Filing 9-2 at 32 (AR 31). Dr. Peters found that Edward W. is capable of low stress work and cannot tolerate sustained physical activity. Filing 11-1 at 176 (AR 1137); Filing 9-2 at 32 (AR 31). According to Dr. Peters, Edward W. can only walk one to two blocks, and, within an eight-hour workday, can stand and walk for less than two hours and sit for at least six hours. *Id.* Dr. Peters suggested Edward W. would need to take unscheduled breaks during the workday every fifteen minutes lasting three minutes at a time. Filing 11-1 at 177 (AR 1138); Filing 9-2 at 32 (AR 31). As a result, Dr. Peters anticipates Edward W. will likely be off task 25% or more during a typical workday and would likely be absent from work more than four days per month as a result of his diagnosis.[4] Filing 11-1 at 178 (AR 1139).

The ALJ determined that the opinions from Dr. Peters's December 2022 Statement are not persuasive. Filing 9-2 at 32 (AR 31). Specifically, the ALJ found,

> [Dr. Peters's] opinions are not persuasive as they are not supported by his own treatment notes that otherwise, indicate that the claimant has returned to pre-surgery baseline and is not experiencing any abnormal pulmonary or cardiac symptoms, is not relying on any supplemental oxygen, has [not] had any kind of significant or notable edema, or has any reason to not participate in the light activity he has been encouraged to engage in. They are not consistent with his normal echocardiogram results from June 2022 which demonstrated normal left ventricle chamber size and systolic function with a 55-60% ejection fraction, moderately depressed systolic function, no tricuspid regurgitation, mild mitral regurgitation, and elevated right

---

[3] Dr. Peters's listed diagnosis for Edward W. includes ventricular septal defect (VSD) repair, atrial fibrillation, right heart failure, New York Heart Association (NYHA) Class III (meaning the patient experiences marked limitation in activity due to symptoms, even during less-than-ordinary activity; comfortable only at rest), heart block with pacemaker, and tricuspid valve replacement x3. Filing 11-1 at 175 (AR 1136); *see Specifications Manual for Joint Commission National Quality Measurers: New York Heart Association (NYHA) Classification*, The Joint Commission (2018), https://manual.jointcommission.org/releases/TJC2018A/DataElem0439.html.

[4] *See* cited diagnosis *supra* note 3.

atrial pressure, normal oxygen levels on room air, and ability to live independently without home oxygen since at least June 2022. They are not consistent with the claimant's normal pacemaker evaluations and his ability to engage in cardiac rehabilitation without any apparent difficulties.

Filing 9-2 at 32 (AR 31) (internal citations omitted). When determining the persuasiveness of Dr. Peters's December 2022 Statement, the ALJ compared the severity of Edward W.'s medically determinable impairments before Edward W.'s hospitalization in December 2021—his "baseline"—and after the results of Edward W.'s April 2022 surgery as illustrated by a June 2022 echocardiogram. Filing 9-2 at 30–31 (AR 29–30).

> b. Edward W.'s Medical "Baseline" Prior to December 2021 Hospitalization

Edward W. met with Dr. Peters in October 2020, the first appointment following the amended alleged onset date. Filing 10-1 at 62 (AR 451). Edward W. reported that he was doing well, other than some pain when he sleeps on his left side, and noticed an improvement in his shortness of breath since he stopped smoking. Filing 10-1 at 62 (AR 451). On exam, his heart rate was regular and free of murmurs, gallops, rubs, and clicks with normal jugular venous pressure, no hepatojugular reflux, normal carotid upstrokes, and no bruits. Filing 10-1 at 63 (AR 452). Discussing Edward W.'s most recent echocardiogram from September 2019, Dr. Peters's opined that it showed an ejection fraction of 59% with moderately impaired right ventricular function and right ventricular dilation. Filing 10-1 at 62 (AR 451).[5] The right atrium was also significantly dilated, and he had a normal functioning bioprosthetic tricuspid valve and grade II diastolic dysfunction. Filing 10-1 at 62 (AR 451).

---

[5] The Court is not aware of the lab results of Plaintiff's September 2019 echocardiogram within the record and relies on Dr. Peters's summary of such results. *See e.g.*, Filing 10-1 at 62 (AR 451). Further, the results of Plaintiff's September 2019 echocardiogram are not referenced by the ALJ as supporting evidence.

Edward W. followed up with Dr. Peters in July 2021 when he complained of episodic chest pain while resting and random bouts of weakness and dizziness when dehydrated. Filing 10-1 at 59 (AR 448). He also shared that he exercises forty-five minutes to an hour a day, as instructed, but continues to smoke. Filing 10-1 at 59 (AR 448). His pacemaker demonstrated the presence of paroxysmal atrial fibrillation. Filing 10-1 at 59 (AR 448). His physical exam showed he was generally in good condition, except for the additional sounding of a heart murmur along his left upper sternal border. Filing 10-1 at 59 (AR 448). His medications were adjusted due to the intermittent atrial fibrillation and an order was placed for an echocardiogram and a treadmill stress test. Filing 10-1 at 59 (AR 448).

Over the next few months, Edward W. completed the exercise stress test and echocardiogram, and subsequently met with Dr. Peters and his pacemaker cardiologist, Dr. Jeffrey Mahoney.[6] The exercise stress test in August 2021 showed his blood pressure to be normal with mild improvements to cardiac activity when exercising. Filing 10-1 at 77 (AR 466). The echocardiogram showed mild abnormalities with moderately decreased right ventricular systolic function and a left ventricular ejection fraction of 55-60%. Filing 10-1 at 103–05 (AR 492-94). Dr. Peters, in a September 2021 check-up, interpreted the echocardiogram as suggesting the presence of tricuspid valve stenosis, but described Edward W. as stable from a cardiac standpoint. Filing 10-1 at 74 (AR 463), 119–20 (AR 508–09). Moreover, a device check on Edward W.'s

---

[6] Plaintiff also experienced an episode of abdominal distention in the Fall of 2021 and met with Dr. Clayton Schroeder for a gastroenterology exam. Filing 10-1 at 123–26 (AR 512–15). Testing showed ascites and cirrhosis of the liver, but the physical exam showed his cardiac and pulmonary health to be normal. Filing 10-1 at 123–26 (AR 512–15). The ALJ found this impairment to be nonsevere due to the lack of further concern after a follow up upper endoscopy in November 2021 and such symptoms having not been observed since the April 2022 surgery. Filing 9-2 at 22 (AR21); Filing 10-1 at 135–37 (AR 524–26). Neither party asserts this impairment, nor the presence of ascites or edema, should have been considered severe.

pacemaker by Dr. Mahoney in October 2021 showed no significant abnormalities, and Edward W. was expected to follow up for annual threshold testing and an in-person office visit in January 2022. Filing 10-1 at 386 (AR 775).

   c. Edward W.'s December 2021 Hospitalization and April 2022 Surgery

   Edward W.'s cardiac issues became more acute in December 2021 when Edward W. was hospitalized for four days after several days of coughing and a low-grade fever greater than 100°F. Filing 9-2 at 27 (AR 26); filing 10-1 at 162 (AR 551). He was experiencing chest pain and increased shortness of breath and was treated for tricuspid prosthesis stenosis, acute hypoxic respiratory failure, right heart failure, and atrial fibrillation. Filing 9-2 at 27 (AR 26); filing 10-1 at 158 (AR 547), 162 (AR 551). He was stabilized and discharged with supplemental oxygen and scheduled for a right and left heart cauterization with a need for a follow up tricuspid valve repair. Filing 9-2 at 27 (AR 26); filing 10-1 at 159 (AR 548).

   Following the hospitalization, Edward W. met with Dr. Clayton Schroeder, another cardiologist in the same clinic as Dr. Peters, and Nurse Practitioner Margaret Kinney (NP Kinney). Edward W. reported to Dr. Schroeder in late December 2021 that he was feeling significantly better with the medication change to furosemide. Filing 10-1 at 138–39 (AR 527–28). His physical exam showed an irregular heart rate, but without murmur and clear lungs. Filing 10-1 at 138–39 (AR 527–28). In early January 2022, he similarly reported to NP Kinney that he was doing well since hospitalization. Filing 10-1 at 448 (AR 837). He additionally stated he had quit smoking and drinking alcohol, his shortness of breath was at baseline, and he denied chest pain, chest discomfort, heart palpitations, or racing heart rates. Filing 10-1 at 448 (AR 837).

At this point, Edward W. was scheduled for an upcoming right and left heart catheterization in mid-January and was being evaluated for a valve replacement. Filing 10-1 at 449 (AR 838). As part of the evaluation, an echocardiogram was ordered by Dr. John William Schleifer. Filing 10-1 at 297 (AR 686). The echocardiogram demonstrated significant bioprosthetic tricuspid valve leaflet thickening with severe stenosis and at least moderate regurgitation, severe right atrial enlargement, severely dilated right ventricle with mild or Grade III diastolic dysfunction. Filing 10-1 at 345–47 (AR 734–36). Edward W. met with Dr. Andrew M. Goldsweig, MD, in March 2022. Filing 10-1 at 287 (AR 676). Dr. Goldsweig advised Edward W. that the leads to his pacemaker needed to be addressed and recommended a tricuspid valve-in-valve pacemaker revision of the leads with an arthroscopic approach. Filing 10-1 at 290 (AR 679); Filing 10-1 at 508 (AR 897).

In mid-April 2022, Edward W. underwent a valve-in-valve transcatheter tricuspid valve replacement to treat his severe stenosis. Filing 9-2 at 28 (AR 17); Filing 10-1 at 485–86 (AR 874–75); Filing 10-1 at 346–47 (AR 735–36). A few days after the procedure, Edward W. returned to the cardiac clinic to remove most of his sutures and reported mild neck pain, but no chest pain, shortness of breath, dizziness, lightheadedness, back pain, or numbness or tingling of his extremities. Filing 10-1 at 463–67 (AR 852–56); Filing 10-1 at 495–96 (AR 884–85). Additionally, no concerns were raised about his ability to continue to care for himself independently at home and engage in light activity. Filing 10-1 at 465–67 (AR 854–56).

  d.  Edward W.'s Return to "Baseline" After His April 2022 Surgery

In late April 2022, following his surgery, Edward W.'s pacemaker performance was evaluated which showed no abnormalities, and he was returned to routine quarterly remote

monitoring. Filing 11-1 at 36 (AR 997). He also followed up with Dr. Peters to whom he reported

that he had "noticed a significant improvement." Filing 11-1 at 28 (AR 989). Indeed, Dr. Peters

noticed Edward W. "to be doing much better since [his surgery]" and instructed Edward W. to

continue with this usual device checkups and routine six-month cardiology follow up. Filing 11-1

at 29 (AR 990).

In May 2022, Edward W. took part in a cardiac rehabilitation assessment with the goals of

increasing strength and stamina to eventually engage in thirty to fifty minutes of exercise at a time

and maintaining a healthy diet. Filing 11-1 at 151–56 (AR 1112–17). He was found to be stable

enough to walk for his full six-minute exercise assessment with no need for an assistive device

and with no issues with balance, falls, or other limitations. Filing 11-1 at 153 (AR 1114). It was

also noted that he had no learning barriers and he showed no signs of edema, had clear lung sounds,

was within normal limits in his heart sounds, and otherwise had no physical limitations. Filing 11-

1 at 152 (AR 1113). He was prescribed a home exercise regimen to walk on the treadmill at least

three times a week for fifteen to thirty minutes at a time. Filing 11-1 at 153–54 (AR 1114–15). To

further improve his heart health, the assessment set a specific goal for Edward W. to consume less

sodium and eat more fruits and vegetables. Filing 11-1 at 154 (AR 1115).

Edward W.'s June 2022 echocardiogram demonstrated normal left ventricle chamber size

and systolic function with a 55-60% ejection fraction, moderately depressed systolic function, no

tricuspid regurgitation, mild mitral regurgitation, and elevated right atrial pressure. Filing 11-1 at

19 (AR 980). A month following his procedure, Edward W. followed up with Dr. Schroeder and

reported he was doing well. Filing 11-1 at 145 (AR 1106). Edward W. denied any chest pain,

shortness of breath, dizziness, lightheadedness, back pain, bilateral numbness or tingling of

10

extremities, had been participating in cardia rehab, and quit smoking but still smokes marijuana. Filing 11-1 at 145 (AR 1106). On exam, his pulmonary and cardiac exams were normal, and his oxygen saturation measured at 95% on room air. Filing 11-1 at 146 (AR 1107). Later that month, he voluntarily opted out of any further cardiac rehabilitation sessions. Filing 11-1 at 144 (AR 1105).

Edward W.'s remaining checkups that Fall, prior to Dr. Peters's December 2022 Statement, similarly showed no serious decline in physical health. Edward W.'s usual quarterly remote pacemaker performance evaluations with Dr. Mahoney in August 2022 and November 2022 showed no abnormalities, and he was continued on quarterly remote monitoring. Filing 11-1 at 60 (AR 1021); Filing 11-1 at 102 (AR 1062). Edward W. followed up with Dr. Peters in November 2022. Filing 11-1 at 93–95 (AR 1054–56). He complained of a general decline in memory since his procedure and some shortness of breath. Filing 11-1 at 94 (AR 1055). His physical exam revealed no pulmonary or cardiac abnormalities. Filing 11-1 at 94 (AR 1055).

e.    Self and Lay Assessments of Edward W.'s Functionality

Edward W. completed a function report for use by the Social Security Administration in considering his application for disability benefits and supplemental security income on March 17, 2022. Filing 9-6 at 73–80 (AR 339–46). In his report, Edward W. claimed his ability to work is limited due to his shortness of breath and lack of energy. Filing 9-6 at 73 (AR 339). Edward W. described a typical day as staying inside to nap, eat, attempt to do some exercises, and otherwise stay sedentary. Filing 9-6 at 74 (AR 340). Edward W. reported he can bathe and make meals for himself, but otherwise relies on his daughter or friends to do other house chores and shopping. Filing 9-6 at 74–77 (AR 340–43). Further, Edward W. provided that he can only walk up eight

11

stairs before he is out of breath, stand five minutes until he feels exhausted, and experiences short term memory issues. Filing 9-6 at 78 (AR 343).

On March 17, 2022, Edward W.'s ex-wife, Melanie W.,[7] completed a third-party function report on behalf of Edward W. regarding limitations to his abilities. Filing 9-6 at 65–72 (AR 331–338). Melanie W. reported that she assists with house cleaning and making meals when necessary. Filing 9-6 at 65 (AR 331). However, Melanie W. suggested that Edward W. "is in no condition to be able to work. He suffers from a heart condition that he was born with and has significantly declined." Filing 9-6 at 65 (AR 331). Melanie W. further reported Edward W. would watch TV, play board games, read, and play Xbox as his hobbies. Filing 9-6 at 69 (AR 335). As to Edward W.'s social abilities, Melanie W. stated he enjoys chatting with his daughter when she is home and with friends over the phone. Filing 9-6 at 69 (AR 335).

### f. Evaluations of Edward W.'s Medical History by State Consultants

On December 27, 2021, state consulting radiologist, Joanell K. Wheeler, MD, found Edward W. to have "significant heart disease that would limit his ability to sustain heavier work activity." Filing 9-3 at 24 (AR 83). However, Edward W. "has not shown significant episodes of deterioration from a cardiac standpoint that have required hospitalization or increase in the frequency of visits." Filing 9-3 at 24 (AR 83). Although Edward W.'s cardiac questionnaire described daily chest discomfort, limited threshold for physical movement, and an inability to complete daily living activities, Dr. Wheeler did not find this questionnaire consistent with Edward W.'s report to Dr. Peters in July 2021. Filing 9-3 at 24 (AR 83). Edward W. reported in July 2021

---

[7] The Court will refer to Plaintiff's ex-wife by first name and last initial to protect her privacy.

that he was exercising 45 minutes to an hour per day." Filing 9-3 at 24 (AR 83); *see* Filing 10-1 at 59 (AR 448). Dr. Wheeler concluded that, based on the overall evidence, Edward W. would still be able to sustain sedentary work for a 40-hour work week. Filing 9-3 at 24 (AR 83).

Specifically, Dr. Wheeler determined that Edward W. had an RFC to perform sedentary work with the following limitations: Occasionally lift and/or carry up to ten pounds, frequently life and/or carry less than ten pounds, stand and/or walk (with normal breaks) for a total of two hours per day, sit (with normal breaks) for a total of about six hours in an eight hour workday, occasional climbing of ramps and stairs and should avoid climbing ladders, ropes, and scaffolds due to cardiac disease and reports of dizziness and lightheadedness at times. Filing 9-3 at 26–27 (AR 85–86).

On reconsideration of Edward W.'s initial SSA determination, a second state consulting ophthalmologist, Jerry W. Tanner, MD, affirmed, on August 9, 2022, the initial decision by Dr. Wheeler. Filing 9-3 at 41 (AR 100). Dr. Tanner did not find indications that Edward W.'s condition had progressed "significantly to warrant any more favorable findings than last review." Filing 9-3 at 41 (AR 100). Additionally, Dr. Tanner determined that Edward W.'s prior RFC limitations had not become more limiting. Filing 9-3 at 41 (AR 100).

### g.  Edward W.'s Personal Testimony at the ALJ Hearing

On December 19, 2022, the ALJ held a hearing to review the Commissioner's denial of Edward W.'s application for disability insurance benefits and supplemental security income benefits. Filing 9-2 at 42 (AR 41). Edward W. appeared in person and was represented by his attorney. Filing 9-2 at 42 (AR 41). Edward W. testified the last time he did any work was in 2021 for about two weeks when he tried to smoke meats for a friend's food truck, but the smoke was

too much. [Filing 9-2 at 47](#)–48 (AR 46–47). Edward W. explained that his biggest issue keeping him from working is fatigue, and that he regularly feels like he has to go lay down and prop his legs up to keep the swelling down. [Filing 9-2 at 49](#)–50 (AR 48–49). He testified that he can only stand up for 15–20 minutes at a time before his feet would begin to tingle. [Filing 9-2 at 50](#)–51 (AR 49–50). At home, Edward W. said that he lives with his daughter, and she takes care of the cooking, cleaning, laundry, while he sleeps or watches TV most of the day. [Filing 9-2 at 52](#) (AR 51). Edward W. explained that he does not go out with friends but does enjoy occasionally driving to the grocery store. [Filing 9-2 at 52](#)–53 (AR 51–52). Later in the hearing, Edward W. described a bad day for him—occurring about three to four days a week—would be to wake up tired and dizzy with swollen legs, then eat a bowl of cereal before heading back to bed for the remainder of the day. [Filing 9-2 at 55](#)–56 (AR 54–55).

Edward W. further testified that he is still communicating with doctors about his fogginess and memory. [Filing 9-2 at 56](#) (AR 55). He suggested those symptoms worsened following the April 2022 surgery but that he has not been diagnosed with anything yet. [Filing 9-2 at 56](#) (AR 55). Finally, Edward W. stated that he has cirrhosis from a leaky heart valve which causes stomach pain every morning. [Filing 9-2 at 57](#) (AR 56). It additionally contributes to the swelling of his abdomen and potentially to his increased fatigue and inability to do day-to-day activities. [Filing 9-2 at 57](#) (AR 56).

### 3. The ALJ's Impairment Findings

Under [20 C.F.R. § 416.920(b)](#), an ALJ will conduct a five-step analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing

*Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ will consider the following during

that analysis:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a
> severe impairment, (3) whether the impairment meets the criteria of any Social
> Security Income listings, (4) whether the impairment prevents the claimant from
> performing past relevant work, and (5) whether the impairment necessarily
> prevents the claimant from doing any other work.

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal

citation omitted)). The claimant generally bears the burden of proving he or she is disabled at the

first four steps of the process, while the ALJ bears the burden of proving a claimant is not disabled

at step five. 20 C.F.R. §§ 416.912(a)-(b), 416.960(c)(2). If the ALJ finds the claimant is not

disabled at steps one, two, four, or five, or finds the claimant is disabled at steps three or five, the

ALJ will end the analysis. 20 C.F.R. § 404.1520(a).

At the first step of the five-step sequential process, an ALJ will find a claimant is not

disabled if the claimant is working and that work is considered substantial gainful activity. 20

C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial

and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that

involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful work

activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this

case, the ALJ determined Edward W. had not engaged in substantial gainful activity since April

19, 2019, the application date and amended alleged onset date, which allowed the ALJ to proceed

to the second step of the analysis. Filing 9-2 at 21 (AR 20).

At step two, the ALJ must determine whether the claimant has a medically determinable

impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A

claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If an ALJ finds the claimant's medically determinable impairment or combination of impairments as not severe, the claimant is not disabled. 20 C.F.R. § 416.920(c).

The ALJ determined Edward W. had the following severe impairments significantly limiting the ability to perform basic work activities: ventricular septal defect (status post repair), atrioventricular block, tricuspid stenosis, and paroxysmal atrial fibrillation (status post pacemaker). Filing 9-2 at 22 (AR 21). Although Edward W. has been monitored regularly for anxiety and depression and at times has self-reported accompanying symptoms, he has not engaged in any ongoing psychological care or specialized psychiatric care and his mental status exams have been normal. Filing 9-2 at 22 (AR 21). Therefore, the ALJ found Edward W.'s "medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas" and the "mental impairments of anxiety [and depression] do[ ] not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." Filing 9-2 at 22 (AR 21); Filing 9-2 at 24 (AR 23).

At the third step of the process, the ALJ will ascertain whether the claimant's impairment or combination of impairments is of a severity to meet the listed criteria in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does meet the listed criteria the ALJ will find the claimant is disabled; if, however, the ALJ determines the claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that none of Edward W.'s physical impairments alone

16

or in combination are of a severity to meet the listed criteria under 20 C.F.R. Pt. 404, Subpt. P, App. 1, which prompted the ALJ to proceed to step four of the analysis. Filing 9-2 at 24 (AR 23).

### 4.    *The ALJ's RFC Findings*

At step four of the five-step analysis, the ALJ will first determine the claimant's residual functional capacity (RFC), then assess the claimant's RFC in consideration of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is their ability to do physical and mental work despite limitations from their impairments. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 404.1512(a). The ALJ determines a claimant's RFC by using all relevant evidence in the claimant's case record, "including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger*, 390 F.3d at 591; *see also* 20 C.F.R. § 404.1545(a).

Ultimately, the ALJ in this case ruled that though the claimant's cardiac issues became more acute in December 2021, requiring additional treatment and monitoring including oxygen use at home, by June 2022, he had recovered sufficiently at his baseline to return to the capabilities within the RFC. Filing 9-2 at 29 (AR 28). The ALJ concluded the following pertaining to Edward W.'s RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can never climb ladders, ropes or scaffolds and occasionally climb stairs or ramps, stoop, kneel, crouch and crawl. He can tolerate occasional exposure to high humidity, extreme hot/cold temperatures, pulmonary irritants, and hazards (such as unprotected heights and moving mechanical parts).

Filing 9-2 at 25 (AR 24).

Following the ALJ's determination of the claimant's RFC, the claimant's RFC will be compared to their past relevant work. 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(b). Past relevant work is substantial gainful activity claimant performed within the past fifteen years or fifteen years prior to the date disability must be established, and that substantial gainful activity lasted long enough for the claimant to learn to do the work. 20 C.F.R. § 416.960(b)(1); *see generally* 20 C.F.R § 416.965(a). If the claimant has the RFC to do his past relevant work the ALJ will conclude the claimant is not disabled and the analysis ends, but if the claimant is unable to do any past relevant work or does not have any past relevant work the ALJ proceeds to the fifth and final step. 20 C.F.R. § 404.1520(f). Here, the ALJ determined Edward W. has no past relevant work experience. Filing 9-2 at 32 (AR 31). The ALJ then proceeded to the last step of the five-step analysis to determine Edward W.'s disability status. Filing 9-2 at 33 (AR 32).

    5.    *The ALJ's Findings Regarding Ability to do Other Work*

At the fifth and last step of the disability analysis, the ALJ considers the claimant's RFC, age, education, and work experience to determine if the claimant is capable of adjusting to other work. 20 C.F.R. § 404.1520(a)(4)(v).

> If the claimant establishes her inability to do past relevant work, then the burden of proof shifts to the Commissioner. The Commissioner must then prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 591 (internal citations omitted)). Further, even when the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant. *Id.* (citing *Eichelberger*, 390 F.3d at 591 (internal citation omitted)) (the claimant retains burden

of persuasion even after a burden of production shift in step five); *see also* 20 C.F.R § 404.1560(c). If the claimant can make an adjustment to other work that exists in the national economy, the ALJ will find claimant to be not disabled. 20 C.F.R. § 404.1520(g). Conversely, if the claimant cannot adjust to other work or that other work does not exist in the national economy, the ALJ will find the claimant is disabled. 20 C.F.R. § 404.1520(g); *see generally* 20 C.F.R. § 404.1566. In determining a claimant's ability to adjust to other work and if other work exists in the national economy, an ALJ may call on a vocational expert (VE) to testify at the administrative hearing. 20 C.F.R. § 404.1566(e). The VE's role is "to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)).

In the present case, VE Steve Shill testified at the administrative hearing as to Edward W.'s ability to adjust to other work and if other work existed in substantial numbers in the national economy. Filing 9-2 at 58–60 (AR 57–59). The ALJ asked Mr. Shill if any jobs were available for a hypothetical person of Edward W.'s age, education, and past work experience, with the ability to do work at the sedentary exertional level; no ladders, ropes or scaffolds; occasional ramps and stairs; occasional stoop, kneel, crouch, crawl; occasional work around hazards, such as unprotected heights and moving, mechanical parts; occasional exposure to high humidity, pulmonary irritants, extreme hot or cold temperature, and with no mental limitations. Filing 9-2 at 58–59 (AR 57–58). In response to the ALJ's question, Mr. Shill cited three occupations that he believed Edward W. could perform: "document preparer" (DOT 249.587-018); "eye frame polisher" (DOT 713.684-

19

038); and "callout operator" (DOT 237.367-014). Filing 9-2 at 59 (AR 58).[8] The total number of available jobs across the three cited occupations came to 76,000. Filing 9-2 at 59 (AR 58). The ALJ then asked Mr. Shill how many absences per month and time off task per day a typical employer would tolerate. Filing 9-2 at 59 (AR 58). Mr. Shill, in his professional opinion, testified that an employer would not tolerate a person who misses two or more days a month on a continuous basis or if a person is off task ten percent or more of the day. Filing 9-2 at 59 (AR 58). The VE additionally testified that the need for an employee to elevate their legs to waist level or above outside of regular break time "would be an accommodation and would not be competitive employment." Filing 9-2 at 59–60 (AR 58–59).

Based on the VE's testimony and Edward W.'s RFC, age, education, and work experience, and RFC, the ALJ concluded Edward W. "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Filing 9-2 at 34 (AR 33). Accordingly, Edward W. was found to be not disabled in the final step of the five-step sequential analysis. Filing 9-2 at 34 (AR 33); *see generally* 20 C.F.R. § 404.1520(g)(1).

## II. LEGAL ANALYSIS

### A. Standard of Review

A Social Security claimant must proceed through four levels of administrative review before the claimant may obtain judicial review in federal district court, including an Appeals Council review of the ALJ's decision. *Smith v. Berryhill*, 587 U.S. 471, 475–76 (2019) (claimants must generally proceed through a four-step process before 42 U.S.C. § 405(g) entitles them to

---

[8] The Social Security Administration primarily relies on the Dictionary of Occupational Titles (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. O*NET OnLine, U.S. Dept. of Labor, https://www.onetonline.org/ (last visited Nov. 26, 2024).

judicial review in federal district court); *see also* 42 U.S.C. § 405(g). Once at the federal district court level, the court will "decide whether the [ALJ's] findings 'are supported by substantial evidence on the record as a whole.'" *Bowers v. Kijakazi*, 40 F.4th 872, 874 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the [ALJ's] conclusion." *Id.* (quoting *Prosch*, 201 F.3d at 1012). However, "'[s]ubstantial evidence in the record as a whole' is a more 'rigorous' standard than simply 'substantial evidence'" since the former standard requires consideration of evidence that fairly supports or detracts from the ALJ's determination, whereas the latter does not. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) (first quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021); and then citing *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008)).

The district court "will not reverse the [ALJ's] decision merely because [the court] find[s] that 'substantial evidence exists in the record that would have supported a contrary outcome.'" *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing *Schmitt*, 27 F.4th at 1358)). "Rather, [the court] will 'disturb the [ALJ's] decision only if it falls outside the available zone of choice.'" *Id.* (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Dols v. Saul*, 931 F.3d 741, 745 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Additionally, the district court must determine whether the ALJ's decision "complies with the relevant legal standards." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (internal citations omitted)). "Legal error

may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (internal citation omission in original) (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)). "'In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination.'" *Dols*, 931 F.3d at 745 (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B. Discussion

Edward W. asserts three grounds for reversing and remanding the ALJ's decision. First, Edward W. alleges the ALJ did not articulate sufficient reasons for finding the medical opinions of Dr. Peters were not persuasive. Filing 15-1 at 8–13. Second, Edward W. contends the ALJ's RFC failed to account for duodenitis, depression, anxiety, the need for unscheduled breaks, off task time, absenteeism, fatigue, chest pain at rest, palpitations, leg swelling, and shortness of breath; is less restrictive than State agency reviewing consultants found; and is based on improper inferences from the medical records. Filing 10 at 13–18. Last, Edward W. disputes the ALJ's reliance on allegedly obsolete jobs when determining whether a significant number of jobs exist in the national economy that Edward W. can perform. Filing 15-1 at 18. As pointed out previously, Edward W. does not provide supporting arguments alleging that the jobs the ALJ testified to were obsolete. Instead, Edward W. argues separately that there is an unresolved conflict between the job description for eye glass frame polisher in the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony due to exposure to pulmonary irritants. Filing 15-1 at 18-19.

22

1.    *The ALJ Correctly Evaluated Dr. Peters's December 2022 Statement*

Edward W. first states that the ALJ erred when he found Dr. Peters's December 2022 Statement "not persuasive because it was not supported by his own treatment notes." Filing 15-1 at 1. More specifically, Edward W. avers the ALJ failed to incorporate "many of [the] limitations" stated by Dr. Peters's December 2022 Statement in the ALJ's RFC. Filing 15-1 at 10. Edward W. argues that the ALJ did "not cite to anyplace in the medical record where Dr. Peter's [sic] has stated, or indicated, that [Edward W.] has returned to his pre-surgery baseline (and even if it did, it would be unclear what that meant in terms of [Edward W.'s] RFC related limitations)." Filing 15-1 at 10. Edward W. additionally pointed out that Exhibit 15F, the medical treatment notes cited by the ALJ, is void of any mention of "light activity."[9] As a result, Edward W. claims the ALJ provided "no logical bridge" in determining the inconsistency of Dr. Peters's December 2022 Statement resulting from Edward W.'s lack of reliance on supplemental oxygen and lack of reason not to participate in light activity. Filing 15-1 at 11.

In his brief, Edward W. points out Dr. Peters's notes from four previous appointments with Edward W. to suggest that Dr. Peters's December 2022 Statement is consistent with Edward W.'s past medical records. Filing 15-1 at 11–12. Edward W. lists visits with Dr. Peters's in September 2019, October 2020, July 2021, and August 2021. Filing 15-1 at 11–12. Additionally, Edward W. mentions his hospitalization in December 2021 along with a January 2022 consultation for another cardiac operation as further evidence of a deteriorated functioning capacity. Filing 15-1 at 12–13. Edward W. argues that the ALJ did "not point to any substantive treatment notes to show a conflict

---

[9] However, Plaintiff notes that Exhibit 16F, medical reports from Nebraska Medicine, does discuss cardiac exercise goals for Plaintiff such as walking on the treadmill every week. *E.g.*, Filing 11-1 at 153–54 (AR 1114–15) (post April 2022 surgery cardiac rehabilitation assessment).

or inconsistency in [Dr. Peters's December 2022 Statement]." Filing 15-1 at 13. Instead, Edward W. continues, the ALJ engaged "in recitation of parts of the medical record that neither support nor detract from the [Dr. Peters's December 2022 Statement], such as noting that [Edward W.] is no longer on supplemental oxygen." Filing 15-1 at 13. The Commissioner responds by arguing that the ALJ's determination is supported by substantial evidence on the record as a whole because Dr. Peters's December 2022 Statement was analyzed for its consistency and supportability as required under 20 C.F.R. § 404.1520c. Filing 17 at 12.

The ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). "ALJs evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). Supportability and consistency "are the most important" factors. *Id.* (citing 20 C.F.R. § 404.1520c(a)). The Eighth Circuit has generally recognized, "[a] conclusory report from a treating physician may still be entitled to controlling weight if it is accurate when viewed in the context of the medical record." *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003)). However, the Eighth Circuit has limited the general rule in finding "[a]n ALJ properly discredits such a report, though, if it is unsupported by the medical record." *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 805–06 (8th Cir. 2004)). Additionally, "'an ALJ is not required to discuss every piece of evidence submitted [. . .] Moreover, '[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" *Wildman v. Astrue*, 596 F.3d 959, 966

24

(8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) (internal citations omitted)). A court will "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)).

Edward W.'s contentions about the ALJ's treatment of Dr. Peters's December 2022 Statement are not supported by the record, and the ALJ addressed its supportability and consistency in his evaluation as required by 20 C.F.R. § 404.1520c. *See* Filing 9-2 at 32 (AR 31); *see also* 20 C.F.R. § 404.1520c(b)(1) ("[the ALJ is] not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually."). For lack of supportability, the ALJ explained that the opinions within Dr. Peters's December 2022 Statement:

> Are not persuasive as they are not supported by his own treatment notes that otherwise, indicate that the claimant has returned to pre-surgery baseline and is not experiencing any abnormal pulmonary or cardiac symptoms, is not relying on any supplemental oxygen, has [not] had any kind of significant or notable edema, or has any reason to not participate in the light activity he has been encouraged to engage in.

Filing 9-2 at 32 (AR 31) (internal citations omitted); *see generally* 20 C.F.R. § 404.1520c(c)(1) (supportability is focused on the persuasiveness of a medical opinion; the more objective the opinion, the more persuasive it is). For lack of consistency, the ALJ determined that the opinions within Dr. Peters's December 2022 Statement:

> Are not consistent with his normal echocardiogram results from June 2022 which demonstrated normal left ventricle chamber size and systolic function with a 55-60% ejection fraction, moderately depressed systolic function, no tricuspid regurgitation, mild mitral regurgitation, and elevated right atrial pressure, normal oxygen levels on room air, and ability to live independently without home oxygen

25

since at least June 2022. They are not consistent with the claimant's normal pacemaker evaluations and his ability to engage in cardiac rehabilitation without any apparent difficulties.

Filing 9-2 at 32 (AR 31) (internal citations omitted); *see generally* 20 C.F.R. § 404.1520c(c)(1).

The ALJ's evaluation of Edward W.'s return to pre-surgery baseline is accurate because the ALJ compared Dr. Peters's December 2022 Statement with the echocardiogram results and medical observations from after Edward W.'s April 2022 surgery. Filing 9-2 at 32 (AR 31). Edward W.'s June 2022 echocardiogram results are similar to his August 2021 echocardiogram results taken before his December 2021 hospitalization. Filing 11-1 at 19 (AR 980) (June 2022 echocardiogram); Filing 10-1 at 103–05 (AR 492-94) (August 2021 echocardiogram). In his brief, Edward W. fails to point out Edward W.'s improved condition following his April 2022 surgery confirmed by his June 2022 echocardiogram, initial willingness to participate in cardiac rehabilitation sessions,[10] and subsequent appointment with Dr. Schroeder showing a 95% oxygen saturation on room air. Filing 15-1 at 11–13; Filing 11-1 at 19 (AR 980) (June 2022 echocardiogram); Filing 11-1 at 151–56 (AR 1112–17) (cardiac rehabilitation sessions); Filing 11-1 at 146 (AR 1107) (appointment with Dr. Schroeder). Therefore, the ALJ's conclusion that Dr. Peters's December 2022 Statement is unpersuasive is not erroneous and is supported by substantial evidence on the record as a whole.

2.    *The ALJ Correctly Assessed Edward W.'s RFC*

Edward W. next argues that the ALJ erred by not properly formulating Edward W.'s RFC because the ALJ "failed to account for [Edward W.'s] severe medically determinable impairment Duodenitis; and his medically determinable none-severe impairments of Depression and Anxiety;

_____

[10] Edward W. later voluntarily opted out of any further cardiac rehabilitation sessions. Filing 11-1 at 144 (AR 1105).

26

and improper inferences were made concerning [Edward W.'s] medical records." Filing 15 at 13.

In a flurry of incorporated arguments, Edward W. contends that those impairments—duodenitis,

depression, and anxiety—were not considered beyond step two of the five-step analysis regardless

of their severity. Filing 15 at 15. Edward W. also suggests "it was error to omit frequent

absenteeism and time off task from the finding prior to concluding the sequential evaluation."

Filing 15 at 15. Further, Edward W. asserts that the opinions of the state examiner's, considered

by the ALJ as persuasive, were inconsistent with Edward W.'s RFC. Filing 15 at 17. The

Commissioner responds by arguing that substantial evidence supports the ALJ's decision, and that

Edward W.'s argument is simply an invitation to reweigh the evidence.

  a.  Edward W.'s Medical Record Contains No Mention of Duodenitis

  Although Edward W. argues in his brief that the ALJ did not discuss his duodenitis, the

Commissioner correctly points out that Edward W.'s medical record does not include a diagnosis

of duodenitis. Filing 15-1 at 15; Filing 17 at 13. Only state consultants list duodenitis as an

impairment diagnosis but do so in conjunction with gastritis. *See e.g.*, Filing 9-3 at 26 (AR 85)

("Gastritis and Duodenitis"). Indeed, Edward W.'s endoscopy on November 22, 2021, revealed

gastritis (inflammation of the stomach lining) caused by the bacteria H. pylori. Filing 10-1 at 136

(AR 525); Filing 10-1 at 168 (AR 557). Perhaps Edward W. meant gastritis instead of duodenitis

in his brief. Regardless, "'an ALJ is not required to discuss every piece of evidence submitted. . . .'

Moreover, '[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was

not considered.'" *Wildman*, 596 F.3d at 966) (quoting *Black*, 143 F.3d at 386 (internal citations

omitted)). As with other similar abdominal issues, the ALJ determined them to be non-severe. *See*

*supra* note 6. Still, the ALJ referenced abdominal bloating, ascites, distention, and edema

27

throughout its analysis in step four. Filing 9-2 at 28–31(AR 27–30). Therefore, the ALJ did not err in not mentioning duodenitis nor gastritis beyond step two.

> ### b.  The ALJ Correctly Considered Edward W.'s Depression and Anxiety

Edward W. next argues that the ALJ failed to properly consider depression and anxiety and their limiting effects beyond step two. Filing 15-1 at 14. When evaluating the severity of a claimant's mental impairments at step two, an ALJ must first "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria. *See* 20 C.F.R. § 404.1520a(b)(2). As correctly noted by the ALJ, the criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3); Filing 9-2 at 22–23 (AR 21–22). The ALJ rates the criteria using a five-point scale of none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the claimant's mental impairments as "none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1).

At step two, the ALJ assessed that Edward W. has been monitored regularly for anxiety and depression and at times has self-reported accompanying symptoms, although he has not engaged in any ongoing psychological care or specialized psychiatric care and his mental status exams have been normal. Filing 9-2 at 22 (AR 21). Therefore, the ALJ concluded that Edward

W.'s "medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas" and the "mental impairments of anxiety [and depression] does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." Filing 9-2 at 22 (AR 21); Filing 9-2 at 24 (AR 23). Notably, Edward W. does not argue that finding his mental impairments to be non-severe at step two was error; rather, he contends that the ALJ erred because the ALJ failed to consider the impact of Edward W.'s non-severe mental impairments on the RFC. Filing 15 at 13.

"At the fourth step, the ALJ assesses the claimant's RFC and considers whether the claimant can do his past relevant work based on his RFC." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *see* 20 C.F.R. § 404.1520(e). "RFC is defined as the most a claimant can do despite his limitations, including both physical and mental limitations." *Hensley v. Colvin*, 829 F.3d 926, 931 (8th Cir. 2016); 20 C.F.R. § 404.1545. "The ALJ's RFC assessment must be based on 'all the relevant evidence in [the] case record.'" *Igo*, 839 F.3d at 730 (citing 20 C.F.R. § 404.1545(a)). "Even 'non-severe' impairments must be considered in the RFC." *Igo*, 839 F.3d at 730 (citing *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "In evaluating the ALJ's RFC assessment, 'we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence, and we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence.'" *Igo*, 839 F.3d at 730 (citing *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005)).

After careful consideration of the record taken as a whole, the ALJ determined that the record did not warrant the inclusion of mental limitations in the RFC:

> On reconsideration, the psychological consultative examiners found that the claimant had no severe mental impairments resulting in no mental limitations.

> These findings are persuasive as they are supported by their analyses, particularly that despite a reported history of anxiety and some reports of memory difficulties, the claimant has otherwise reported that he can understand and follow instructions, he has made no recent complaints of mental symptoms, and has no specialty treatment for psychiatric needs. They are consistent with his lack of inpatient, acute, or emergency psychiatric services, ongoing or even intermittent individual therapy or counseling services, and the normal mental status exams observed by various providers, including the ability to serve as his own medical historian and decisionmaker, and otherwise, presents as alert, oriented, and cooperative, even when he was hospitalized in December 2021 and for his surgery in April 2022.

Filing 9-2 at 31 (AR 30) (internal citations omitted).[11] The fact that the ALJ concluded for purposes of step two that Edward W.'s mental impairments were "mild" does not mean that the RFC must include mental functioning limitations. *Jean P. v. Kijakazi*, 8:21-CV-200, 2022 WL 1505797 at *7 (D. Neb. May 12, 2022) (citing *William G. Long JR., v. Comm'r of Soc. Sec.*, No. CV 20-1358-MN, 2022 WL 609620 at *7 (D. Del. Jan. 31, 2022) ("Although an ALJ must consider limitations imposed by all of an individual's impairments, both severe and non-severe, when making their RFC assessment, there is no requirement that an ALJ must find or include limitations associated with mild impairments."). Rather, it simply requires the ALJ to assess these non-severe mental impairments in the context of determining an appropriate RFC. The ALJ's findings in step two can be harmonized with the ALJ's analysis in step four as the ALJ found mild limitations in step two and went on to consider those limitations in step four, ultimately concluding that Edward W. retained the ability to perform work within the parameters of the RFC. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam) ("[W]e must strive to harmonize [ALJ's] statements [at the different steps] where possible"). In doing so, the ALJ did not err.

---

[11] Although not referenced by the ALJ, it should be noted that the alleged impairments on Edward W.'s application did not include any mental impairments. Filing 9-5 at 2–3 (AR 233–34) (listing "Heart, Dependent on Pacemaker" as the only illnesses, injuries, or conditions); *see Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("The fact that [a claimant] did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed.").

c.  The ALJ's Decision to Omit Absenteeism and Time Off Task
Limitations from the RFC Is Supported by the Evidence

Edward W. argues that frequent absenteeism and time off task limitations should not have been omitted from the ALJ's RFC evaluation. Filing 15-1 at 15. Edward W. cites to those limitations specifically from Dr. Peters's December 2022 Statement. Filing 15-1 at 15. As the Commissioner correctly points out, the success of this argument is predicated on the persuasiveness of Dr. Peters's December 2022 Statement. *See* Filing 17 at 14. As has been already discussed above, the ALJ's conclusion that Dr. Peters's December 2022 Statement is unpersuasive is not erroneous and is supported by substantial evidence on the record as a whole. Therefore, the ALJ did not err in omitting absenteeism and time off task limitations from the RFC when those opinions originate from Dr. Peters's December 2022 Statement.

d.  The ALJ Correctly Considered the Opinions of the State
Examiner's within the RFC

Next, Edward W. asserts that the opinions of the state examiners, considered by the ALJ as persuasive, were inconsistent with the ALJ's determination of Edward W.'s RFC. Filing 15 at 17. The difference between the state examiner's opinions and the ALJ's RFC focuses on the limitations of tolerating high humidity, extreme hot/cold, pulmonary irritants, and hazards. Filing 15-1 at 17. Edward W.'s brief points out that the state examiners listed those limitations as "avoid even moderate exposure," while the ALJ listed the same as "occasional." Filing 15-1 at 17. Edward W. describes the ALJ's limitation differences as "less restrictive" than the state examiners. Filing 15-1 at 16.

An ALJ is "not required to adopt the exact limitations set forth in the [medical] opinions [he] found persuasive." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct.

12, 2023) (per curiam). Moreover, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Schmitt*, 27 F.4th at 1360 (citing *Hensley*, 829 F.3d at 932)). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Schmitt*, 27 F.4th at 1360 (citing *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007)). Further, "the ALJ is not required to 'explicitly . . . reconcile every conflicting shred' of medical evidence." *Austin*, 52 F.4th at 729 (citing *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)); 20 C.F.R. § 404.1520c(b)(1) ("[The ALJ is] not required to articulate how [he] considered each medical opinion . . . from one medical source individually.").

The ALJ considered the state examiners' medical opinions, including their supportability and consistency as required by 20 C.F.R. § 404.1520c(a). Filing 9-2 at 30–31 (AR 29–30).

> The physical examiners at the State disability determination services found the claimant to have severe impairments related to his cardiac issues, limiting him to sedentary exertional work with additional postural and environmental limitations. These findings are persuasive as they are supported by their analyses, particularly that the claimant's reported history was not fully consistent with his medical evidence of record, he had been referred to another cardiac center for further treatment, and his condition had not significantly deteriorated after the valve leakage was found. They are consistent with the claimant's eventual recovery to his previous baseline by June 2022, by which time he reported no further issues with chest pain or shortness of breath, and his providers continued to note no concerns for edema and his pulmonary and cardiac exams were largely normal. They are consistent with his June 2022 echocardiogram was which demonstrated normal left ventricle chamber size and systolic function with a 55-60% ejection fraction, moderately depressed systolic function, no tricuspid regurgitation, mild mitral regurgitation, and elevated right atrial pressure. They are consistent with his ability to engage in cardiac rehabilitation, normal pacemaker results, and eventual return to his usual periodic cardiac monitoring.

Filing 9-2 at 30–31 (AR 29–30). In doing so, the ALJ's RFC is supported by the evidence and no error occurred when the ALJ's limitations differed slightly from the state examiners.

### 3.    There is No Conflict Between the DOT Description and VE Testimony

In Edward W.'s final argument, he disputes the ALJ's reliance on allegedly obsolete jobs when determining whether a significant number of jobs exist in the national economy that Edward W. can perform. Filing 15-1 at 18. However, Edward W. does not provide supporting arguments alleging that the jobs the ALJ testified to were obsolete. Instead, Edward W. argues that there is an unresolved conflict between the job description for eye glass frame polisher in the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony due to exposure to pulmonary irritants. Filing 15-1 at 18-19. However, the Court concludes that there is no conflict between the DOT description for eye glass polisher and the vocational expert testimony. The ALJ's RFC finding and hypothetical question asked the VE to restrict Edward W. to jobs that meet his limitations—occasional exposure to high humidity, pulmonary irritants, and extreme temperature. Filing 9-2 at 58–59 (AR 57–58). The DOT description for eye glass polisher states that exposure to temperature extremes, humidity, toxic chemicals, and other environmental conditions are "not present." Polisher, Eyeglass Frames, DICOT 713.684-038, 1991 WL 679267.

Edward W.'s brief additionally gives vague statements regarding "whether [the identified] occupations are performed with more modern tools or processes" and that "it is unclear if the [call out operator] occupation cited exists in significant numbers." Filing 15-1 at 20. However, Edward W. does not attempt to propose an argument or cite to legal authority. Accordingly, the Court will not address those propositions. See *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) ("Allegations of error not accompanied by convincing argument and citation to authority need not

be addressed . . . and [courts] regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities."). Therefore, the VE's testimony supports the ALJ's decision.

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision that Edward W. is not disabled. Accordingly,

IT IS ORDERED that

1.    Edward W.'s Motion for an Order Reversing the Commissioner's Decision, Filing 15, is denied;

2.    O'Malley's Motion for an Order Affirming the Commissioner's Decision, Filing 16, is granted;

3.    The Commissioner's decision is affirmed;

4.    The Court will enter a separate judgment.

Dated this 12th of December, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge

34